WO               IN THE UNITED STATES DISTRICT COURT

                     FOR THE DISTRICT OF ALASKA


CHRISTINE ANN NORMAN,           )
                                )
                 Plaintiff,     )
                                )
     vs.                        )
                                )
ANDREW SAUL, Commissioner of Social  )
Secretary,                      )
                                )   No. 1:19-cv-0004-HRH
                 Defendant.     )
_____)


                              O R D E R

   This is an action for judicial review of the denial of disability benefits under Title II and Title XVI of the Social Security Act, 42 U.S.C. §§ 401-434, 1381-1383f. Plaintiff Christine Ann Norman has timely filed her opening brief,[1] to which defendant, Andrew Saul,[2] has timely responded. Oral argument was not requested and is not deemed necessary.

                         Procedural Background

   On November 30, 2015, plaintiff filed applications for disability benefits under Title II and Title XVI of the Social Security Act, alleging that she became disabled on October 5, 2015. Plaintiff alleges that she is disabled due to paranoid schizophrenia and schizophrenic

---

[1]Docket No. 12.

[2]Docket No. 13.

-1-

affective disorder. Plaintiff's applications were denied initially, and plaintiff requested a hearing. After an administrative hearing on March 9, 2018, an administrative law judge (ALJ) denied plaintiff's application. Plaintiff sought review of the ALJ's unfavorable decision. On March 11, 2019, the Appeals Council denied plaintiff's request for review, thereby making the ALJ's March 29, 2018 decision the final decision of the Commissioner. On April 8, 2019, plaintiff commenced this action in which she asks the court to review the Commissioner's final decision.

## General Background

Plaintiff was born on June 26, 1968. Plaintiff was 47 years old on her alleged onset date. Plaintiff did not graduate from high school but did obtain a high school equivalency diploma. Plaintiff's past relevant work was as a personal care attendant, a housekeeper, and a laundry tech.

## The ALJ's Decision

The ALJ first determined that plaintiff met "the insured status requirements of the Social Security Act through December 31, 2020."[3]

The ALJ then applied the five-step sequential analysis used to determine whether an individual is disabled.[4]

---

[3]Admin. Rec. at 191.

[4]The five steps are as follows:

> Step one: Is the claimant presently engaged in substantial
(continued...)

At step one, the ALJ found that plaintiff had "not engaged in substantial gainful activity since October 5, 2015, the alleged onset date. . . ."[5]

At step two, the ALJ found that plaintiff had "the following medically determinable impairments: hypothyroidism, and schizophrenia/schizoaffective disorder. . . ."[6] But, the ALJ found that plaintiff did "not have an impairment or combination of impairments that has significantly limited (or is expected to significantly limit) the ability to perform basic work-related activities for 12 consecutive months; therefore, the claimant does not have a severe

---

[4](...continued)
> gainful activity? If so, the claimant is not disabled. If not, proceed to step two.
> Step two: Is the claimant's alleged impairment sufficiently severe to limit . . . her ability to work? If so, proceed to step three. If not, the claimant is not disabled.
> Step three: Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R., pt. 404, subpt. P, app. 1? If so, the claimant is disabled. If not, proceed to step four.
> Step four: Does the claimant possess the residual functional capacity ("RFC") to perform . . . her past relevant work? If so, the claimant is not disabled. If not, proceed to step five.
> Step five: Does the claimant's RFC, when considered with the claimant's age, education, and work experience, allow . . . her to adjust to other work that exists in significant numbers in the national economy? If so, the claimant is not disabled. If not, the claimant is disabled.

Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006).

[5]Admin. Rec. at 192.

[6]Admin. Rec. at 192.

impairment or combination of impairments. . . ."[7] The ALJ found that plaintiff had "an exacerbation of her symptoms during 2017" but that she had "ongoing improvement of her symptoms when she continued to take her medications."[8]

The ALJ found plaintiff's statements regarding her symptoms less than credible.[9]

The ALJ gave great weight [10] to Dr. Lebeau's opinion.[11] The ALJ gave great weight[12] to Dr. Valette's opinion.[13] The ALJ gave little weight[14] to the opinion of ANP James

---

[7]Admin. Rec. at 192.

[8]Admin. Rec. at 194.

[9]Admin. Rec. at 193.

[10]Admin. Rec. at 193.

[11]Dr. Lebeau testified as a medical expert at the administrative hearing. He opined that plaintiff's hypothyroidism would not result in any physical limitations as long as it is treated. Admin. Rec. at 217.

[12]Admin. Rec. at 197.

[13]Dr. Valette testified as a medical expert at the administrative hearing. She opined that when plaintiff is on her medications, she has no limitations as to understanding, remembering, or applying information, but when she is off her medications, she has markedly extreme limitations. Admin. Rec. at 219-220. Dr. Valette also opined that when plaintiff is on her medications, she has no limitations as to interacting with others and as to concentration, persistence or pace, but when she is off her medications she has markedly extreme limitations in both these areas. Admin. Rec. at 220. Dr. Valette further opined that plaintiff had mild limitations as to adapting or managing oneself when she was on her medication and moderate limitations when she was off her medication. Admin. Rec. at 220-221.

[14]Admin. Rec. at 196.

Overfelt.[15] The ALJ also gave little weight[16] to the opinion of Debra Arthur-Wilkinson.[17]

---

[15]Overfelt began managing plaintiff's medication at Juneau Alliance for Mental Health Inc. (JAMHI) in October of 2017. Admin. Rec. at 1189. On January 30, 2018, Overfelt opined that plaintiff's symptoms had lasted or were expected to last for at least twelve months. Admin. Rec. at 1079. Overfelt also opined that plaintiff had moderate limitations in her ability to remember locations and work-like procedures, understand/remember/carry out very short and simple instructions, sustain an ordinary routine without special supervision, interact appropriately with the public, ask simple questions or request assistance, maintain socially appropriate behavior, adhere to basic standards of neatness and cleanliness; marked limitations in her ability to maintain attention and concentration for extended periods, perform activities within a schedule, maintain regular attendance, be punctual within customary tolerances, make simple work-related decisions, get along with coworkers or peers without distracting them or exhibiting behavioral extremes, be aware of normal hazards and take appropriate precautions, set realistic goals or make plans independently of others, and tolerate normal levels of stress; and extreme limitations in her ability to understand/remember/carry out detailed instructions, work in coordination with or proximity to others without being distracted by them, complete a normal workday and workweek without interruptions from psychologically based symptoms, perform at a consistent pace without an unreasonable number of and length of rest periods, accept instructions and respond appropriately to criticism from supervisors, respond appropriately to changes in the work setting, and travel in unfamiliar places or use public transportation. Admin. Rec. at 1080-1081. Overfelt further opined that plaintiff was not capable of having even a low stress job and that she would miss more than four days of work per month due to her mental impairment. Admin. Rec. at 1083.

[16]Admin. Rec. at 196.

[17]Arthur-Wilkinson, MA, LPA, was involved in plaintiff's treatment at JAMHI. She opined on January 30, 2018, that plaintiff's impairments had lasted or were expected to last at least 12 months. Admin. Rec. at 1086. Arthur-Wilkinson further opined that plaintiff had marked limitations in her ability to remember locations and work-like procedures, understand/remem-ber/carry out very short and simple instructions, sustain an ordinary routine without special supervision, interact with the general public, ask simple questions or request assistance, accept instructions, respond appropriately to criticism from supervisors, get along with coworkers or peers without distracting them or exhibiting behavioral extremes, maintain socially appropriate behavior, adhere to basic standards of neatness and cleanliness, and be aware of normal hazards and take appropriate precautions; and extreme limitations in her ability to understand/remember/carry out detailed instructions, maintain attention and concentration for extended periods, perform activities within a schedule,
(continued...)

The ALJ gave some weight[18] to Dr. Burke's opinion.[19]

The ALJ considered the "paragraph B" criteria.[20] The ALJ found that plaintiff had no limitations as to understanding, remembering, or applying information; no limitations as to interacting with others; no limitations as to concentrating, persisting or maintaining pace; and mild limitations as to adapting or managing oneself.[21]

"In sum," the ALJ found that plaintiff's "physical and mental impairments, considered singly and in combination, do not significantly limit the claimant's ability to perform basic work activities. Thus, the claimant does not have a severe impairment or combination of

---

[17](...continued)
maintain regular attendance, be punctual within customary tolerances, work in coordination with or proximity to others without being distracted by them, make simple work-related decisions, complete a normal workday and workweek without interruptions from psychologically based symptoms, perform at a consistent pace without an unreasonable number of and length of rest periods, respond appropriately to changes in the work setting, travel to unfamiliar places or use public transportation, set realistic goals, make plans independently of others, and tolerate normal levels of stress. Admin. Rec. at 1087-1088. Arthur-Wilkinson opined that plaintiff was not even capable of a low stress job and that she would miss more than four days per month due to her mental impairments. Admin. Rec. at 1089.

[18] Admin. Rec. at 197.

[19] On June 16, 2016, Dr. Burke opined that plaintiff had no limitations as to activities of daily living, no difficulties maintaining social functioning, mild difficulties maintaining concentration, persistence or pace, and four or more episodes of decompensation, each of extended duration. Admin. Rec. at 265.

[20] Admin. Rec. at 197-198.

[21] Admin. Rec. at 198.

impairments."[22] The ALJ concluded that plaintiff had "not been under a disability, as defined in the Social Security Act, from October 5, 2015 through the date of this decision. . . ."[23]

Standard of Review

Pursuant to 42 U.S.C. § 405(g), the court has the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner. . . ." The court "properly affirms the Commissioner's decision denying benefits if it is supported by substantial evidence and based on the application of correct legal standards." Sandgathe v. Chater, 108 F.3d 978, 980 (9th Cir. 1997). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Id. (quoting Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995)). "'To determine whether substantial evidence supports the ALJ's decision, [the court] review[s] the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion.'" Id. (quoting Andrews, 53 F.3d at 1039). If the evidence is susceptible to more than one reasonable interpretation, the court must uphold the Commissioner's decision. Id. But, the Commissioner's decision cannot be affirmed "'simply by isolating a specific quantum of supporting evidence.'" Holohan v. Massanari, 246 F.3d 1195, 1201 (9th Cir. 2001) (quoting Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999)).

---

[22]Admin. Rec. at 198.

[23]Admin. Rec. at 198.

Discussion

The primary issue here is whether the ALJ's step two finding was supported by substantial evidence. But first, the court must decide what evidence it can consider because plaintiff submitted new evidence to the Appeals Council that was not before the ALJ. "[W]hen the Appeals Council considers new evidence in deciding whether to review a decision of the ALJ, that evidence becomes part of the administrative record, which the district court must consider when reviewing the Commissioner's final decision for substantial evidence." Decker v. Berryhill, 856 F.3d 659, 664 (9th Cir. 2017) (citation omitted). But, if the Appeals Council only looked at the new evidence, it is not part of the record. Schenone v. Saul, Case No. 2:18-cv-01655-AC, 2019 WL 2994492, at *6 (E.D. Cal. July 8, 2019).

Plaintiff "submitted 171 pages of medical records from" JAMHI, "dated October 27, 2015 to March 21, 2018; and two pages from Carolyn Corbett, PMHNP, dated June 18, 2018."[24] The Appeals Council found "this evidence does not show a reasonable probability that it would change the outcome of the decision. We did not exhibit this evidence."[25]

Defendant argues that this means that the Appeals Council did consider this evidence, but found that it did not change the ALJ's decision. But, the Appeals Council did not specifically state that it had considered the new evidence. Instead, it ambiguously stated that it found "this evidence does not show a reasonable probability that it would change the

---

[24]Admin. Rec. at 2.

[25]Admin. Rec. at 2.

outcome of the decision. We did not exhibit this evidence."[26] "Several courts in this circuit have analyzed similar language: Some have read it to mean that the Appeals Council necessarily 'considered' the newly-submitted evidence, and others have concluded that the Council's express statement that it did not "consider" or "exhibit" evidence means it only 'looked at' the evidence." Vahey v. Saul, Case No. 18-00350-ACK-KJM, 2019 WL 3763436, at *7 (D. Hawai'i Aug. 9, 2019).

This court finds that it is not clear as to whether the Appeals Council considered the new evidence or merely looked at this evidence. There may be some special meaning that the Appeals Council attributes to the word "exhibit", but if there is, defendant has not advised the court of what that meaning is. Further ambiguity is created by the fact that this new evidence is included in the certified administrative record that defendant submitted in this case. The Appeals Council would do well in future cases to clearly state whether it has "considered" new evidence submitted to it or whether it has merely "looked" at such evidence, rather than continuing to use the ambiguous language present in this case.

In cases such as this, where it is not clear whether the Appeals Council has "considered" or merely "looked" at the new evidence, some courts "will . . . review the evidence for themselves to decide whether it would impact the outcome." Id. at *9. Others courts remand in order to allow the ALJ to consider the newly submitted evidence in the first instance. Id. at *10. Here, the court need not chose which of these paths would be most

---

[26]Admin. Rec. at 2.

appropriate, because even if the newly submitted evidence is not considered by the court, the ALJ erred in ending his analysis at step two and this matter must be remanded for further proceedings.

"At step two, the claimant bears the burden of demonstrating a severe, medically determinable impairment that meets the duration requirement." Kaufman v. Astrue, Case No. CV 10–5221 AGR, 2011 WL 3754845, at *2 (C.D. Cal. Aug. 25, 2011) (citing 20 C.F.R. § 404.1520(a)(4)(ii)). "To satisfy the duration requirement, the severe impairment must have lasted or be expected to last for a continuous period of not less than 12 months." Id. "[T]he step-two inquiry is a de minimis screening device to dispose of groundless claims." Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996). "An impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal effect on an individual['s] ability to work.'" Id. (quoting SSR 85–28). The question is "whether the ALJ had substantial evidence to find that the medical evidence clearly established that [plaintiff] did not have a medically severe impairment or combination of impairments." Webb v. Barnhart, 433 F.3d 683, 687 (9th Cir. 2005).

Defendant argues that the ALJ did not err at step two because "[i]mpairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits." Warre v. Comm'r of Social Sec. Admin., 439 F.3d 1001, 1006 (9th Cir. 2006). Defendant argues that the evidence shows that when plaintiff took her

medication her symptoms improved and she had only mild limitations in adapting or managing herself. In other words, defendant argues that the record shows that when she took her medication, plaintiff had no more than a slight abnormality that would minimally affect her ability to work.

The record does show that plaintiff's schizophrenia was more controlled when she took her medications,[27] but it also shows that plaintiff did not always take her medications[28] which in 2017 resulted in an extended period of decompensation.[29] And the fact that plaintiff did not take her medications at times seems to be largely a result of her underlying mental illness. Moreover, the record shows that clinicians at JAMHI found that plaintiff was impaired due to the voices that she hears, even when she was on medication.[30] This is not

---

[27]See, e.g., Admin. Rec. at 779 (clinician at JAMHI noted that plaintiff was hearing "less voices" on June 9, 2016, at a time when she was taking oral Haldol, Cogentin, Abilify and receiving Haldol injections); Admin. Rec. at 781 (on July 15, 2016, clinician at JAMHI noted that plaintiff reported hearing voices only 10 days out of the month); 1280 (on November 13, 2017, plaintiff was "[h]appy, talkative with good eye contact" when she came in for her Haldol injection).

[28]See, e.g., Admin. Rec. at 869-870 (on May 19, 2017, ANP Pleasants at JAMHI noted that plaintiff "has been off" her meds "for a few months" and "[s]he did not want to elude to why she went on or off"); Admin. Rec. at 1252 (on September 6, 2017, clinician at JAHMI noted that plaintiff had indicated that she "felt that she'd never had a mental illness and refused to see the psychiatric provider at JAMHI").

[29]Plaintiff was admitted to the mental health unit at Bartlett Regional Hospital on June 23, 2017; transferred to the Alaska Psychiatric Institute on August 6, 2017; and discharged from API on August 24, 2017. Admin. Rec. at 885, 979.

[30]See, e.g., Admin. Rec. at 682, 691 (JAMHI clinician noted that plaintiff's voices had "been worse than normal[,]" with normal "being able to go days where she can ignore them"
(continued...)

a case in which there is a "total absence of objective evidence of severe medical impairment such as was the case in Ukolov v. Barnhart, 420 F.3d 1002 (9th Cir. 2005)[.]" Webb, 433 F.3d at 688. There, the Ninth Circuit "affirmed a finding of no disability at step two when even the claimant's doctor was hesitant to conclude that any of the claimant's symptoms and complaints were medically legitimate." Id. Here, there is no question that plaintiff had schizophrenia which resulted in medically legitimate symptoms that would affect her ability to sustain full-time employment. In sum "[t]he ALJ should have continued the sequential analysis beyond step two because there was not substantial evidence to show that [plaintiff's] claim was 'groundless.'" Id. (quoting Smolen, 80 F.3d at 1290).

## Conclusion

The Commissioner's decision is reversed and this matter is remanded for further proceedings.

DATED at Anchorage, Alaska, this 1st day of October, 2019.

/s/ H. Russel Holland
United States District Judge

---

[30](...continued)
and that she "does have some continued issues with disorganization and odd patterns, consistent with schizophrenia"); Admin. Rec. at 1196 (Overfelt noted on January 26, 2018, four days before he assessed plaintiff with significant limitations, that plaintiff's "voices are usually well controlled[.] [S]he still hears them now and then but they are improved and more manageable"); Admin. Rec. at 1194 (Overfelt noted on December 4, 2017 that plaintiff "reports increased auditory hallucinations despite good medication compliance," and that she wanted to stop her Haldol injections, which Overfelt told her "was not a good idea for now").